UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM F. JEROME,<br><br>       Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 3:14-cv-05784-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On November 21, 2007, plaintiff protectively filed an application for SSI benefits, alleging disability as of September 15, 1996. *See* Dkt. 15, Administrative Record ("AR") 390. That application was denied upon initial administrative review on January 24, 2008, and on reconsideration on October 23, 2008. *See id.* Following a hearing on August 26, 2009, an administrative law judge ("ALJ") issued an unfavorable decision on November 25, 2009. *See id.*

ORDER - 1

Plaintiff then appealed that decision to the Appeals Council, which remanded the application on June 24, 2010, for a new hearing. *See id.*

Following a second hearing on January 12, 2011, another ALJ issued an unfavorable decision on January 18, 2011. *See id.* Plaintiff again appealed the decision, first to the Appeals Council and then to this Court, which remanded the application for a new hearing. *See id.*

A third hearing was held on May 29, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 409-73. In a decision dated August 30, 2013, a third ALJ determined plaintiff to be not disabled. *See* AR 387-408. Plaintiff's request for review of the ALJ's decision was denied as untimely by the Appeals Council on August 6, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 352-55; 20 C.F.R. § 416.1481. On October 7, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on December 22, 2014. *See* Dkt. 14. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in assessing plaintiff's residual functional capacity ("RFC"); (4) in finding him to be capable of returning to his past relevant work; and (5) in alternatively finding him to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the medical evidence on the record, and thus in assessing plaintiff's RFC and finding him capable of returning to past work or alternatively performing other work, and therefore in determining plaintiff to be not

disabled. Also for the reasons set forth below, however, the undersigned finds that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting

ORDER - 3

*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 4

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Plaintiff asserts that the ALJ erred by providing insufficient reasons for rejecting the opinions of Dr. Sarah Landrum, M.D., and Kathleen Henry, A.N.R.P., arguing that their cosigned opinions should be considered the product of a treating team. *See* Dkt. 15, pp. 11-12. The ALJ noted that, regarding the joint opinions of Dr. Landrum and Ms. Henry, there was no evidence in the record that Dr. Landrum ever treated or examined plaintiff for any condition. *See*

ORDER - 5

AR 398.

A nurse practitioner is not an "acceptable medical source" as that term is defined in the Social Security Regulations, and thus may be given less weight than those of acceptable medical sources. *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"). The opinions of sources such as Ms. Henry instead generally are treated in the same manner as testimony of lay witnesses. *See* 20 C.F.R. § 416.913(d) (Commissioner may also use evidence from other sources to show the severity of claimant's impairment(s) and how those impairments affect his or her ability to work).

In arguing that Ms. Henry's opinions are the product of the treating team and should count as Dr. Landrum's opinions, plaintiff cites *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011), and *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003). The Court in *Taylor* cited *Gomez*, 74 F.3d at 971, in finding that a nurse practitioner's opinion was an acceptable medical source. However, the "interdisciplinary team" regulation relied on in *Gomez* has since been repealed, as the Ninth Circuit has explained:

> In holding that a nurse practitioner could be an acceptable medical source, Gomez relied in part on language in 20 C.F.R. § 416.913(a)(6), which stated that "[a] report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence." *See Gomez*, 74 F.3d at 971. This regulatory section has since been repealed. . . .

*Molina v. Astrue*, 674 F.3d 1104, 1111 n.3 (9th Cir. 2012). In *Molina*, the Court of Appeals did not find the physician's assistant qualified as a treating source, because the record did not show she worked under the physician's close supervision. *Id.* at 1111. Similarly, the record here does not show that Ms. Henry worked under the close supervision of Dr. Landrum, as all assessments are listed as performed by Ms. Henry alone, with Dr. Landrum occasionally signing on to her

ORDER - 6

opinions some time later. *See* AR 669-74, 713, 715-17.

In *Benton*, the Court found that the opinion of a supervising psychiatrist leading a "treatment team" should have been treated as that of a treating physician because his complete mental RFC assessment was based on his own knowledge and the knowledge of his treatment team. *See Benton*, 331 F.3d at 1039. Here, Dr. Landrum does not make any assessment of her own; she simply signed on to the assessments made by Ms. Henry. *See* AR 669-74, 713. Therefore, *Benton* does not provide any further evidence that Ms. Henry's opinion should automatically be counted as the product of a treating team.

In June of 2012, Ms. Henry performed an assessment and incapacity review, in which she found plaintiff's work function to be indefinitely impaired from degenerative disc disease, resulting in difficulty sitting, standing, or walking. *See* AR 669, 672-674. In November of 2012, Ms. Henry cosigned a letter with Dr. Landrum stating that plaintiff had a poor prognosis for returning to work because of physical limitations exacerbated by activities such as lifting over 15 pounds or standing or walking for more than 20 to 30 minutes at a time. *See* AR 671.

The ALJ first discredited the opinions in the assessment and the letter because there is no evidence that Dr. Landrum ever treated plaintiff. *See* AR 398. However, this is not a germane reason to reject the limitations assessed by Ms. Henry as an other source of impairment severity and functional effects. The ALJ then discounted the opinions because there is no evidence they were based on anything other than plaintiff's subjective complaints. *See id.*; *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based "to a large extent" on an applicant's self-reports and not on clinical evidence … the ALJ may discount the treating provider's opinion. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.")

ORDER - 7

(internal citations omitted). Here, the assessment contained an objective physical exam in which Ms. Henry found decreased lumbar mobility, decreased active range of motion with limiting factors of pain, and antalgic gait. *See* AR 674. Although Ms. Henry also recorded plaintiff's descriptions of his pain in the history section of the assessment (*see* AR 672), nothing in the record suggests that Ms. Henry relied on those reports more heavily in forming her ultimate opinion on plaintiff's limitations. Substantial evidence does not support the reasons given by the ALJ for discrediting Ms. Henry's assessment. Having not given any germane reason to refute the opinions of Ms. Henry, the ALJ erred.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing

ORDER - 8

a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case assessed found that plaintiff had the RFC to perform:

> **. . . light work as defined in 20 CFR 416.967(b) except the claimant can stand for a total of 2 hours in an 8 hour day, and walk for [a] total of 2 hours in an 8 hour day. The claimant can frequently climb ladders, ropes, scaffolds, ramps and stairs, stoop, kneel, crouch, and crawl. Due to speech issues, the claimant would be limited to occasional interaction with the general public.**

AR 393 (emphasis in original). However, because as discussed above the ALJ erred in evaluating the opinion of Ms. Henry, who assessed plaintiff with more restrictive functional limitations, the ALJ's RFC assessment does not completely and accurately describe all of plaintiff's physical capabilities. Accordingly, here too the ALJ erred.

III.     The ALJ's Step Four and Step Five Determinations

At the most recent hearing, the ALJ posed hypothetical questions to the vocational expert containing substantially the same limitations as were included in the ALJ's RFC assessment. *See* AR 459-71. In response, the vocational expert testified that an individual with those limitations – and with the same age, education, and work experience as plaintiff – would be able to perform his past work as an internet sales clerk as it is actually performed. *See* AR 461. Based on the testimony of the vocational expert, at step four of the sequential disability evaluation process, the ALJ found plaintiff capable of returning to past work. *See* AR 400. Also based on that testimony, the ALJ alternatively found at step five of that process that plaintiff was capable of performing other jobs existing in significant numbers in the national economy.[2] *See id.* But because the ALJ

---

[2] If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett*, 180

erred in evaluating the opinion of Ms. Henry and thus in assessing the plaintiff's RFC, in cannot be said that the hypothetical question the ALJ posed completely and accurately described all of plaintiff's physical capabilities. As such, the ALJ's step four and five determinations also cannot be said to be supported by substantial evidence or free of error.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

---

F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.  An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

ORDER - 10

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the opinion evidence from Ms. Henry, and therefore in regard to plaintiff's RFC and his ability to perform both his past relevant work and other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 21st day of May, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 11